A95A1517, A95A1518. PORTER v. INGLES MARKET, INC. et al.;
and vice versa.
(464 SE2d 212)

ANDREWS, Judge.

The applications of Porter, employee, and Ingles Market, Inc., employer/self-insurer, were granted to consider, respectively, the issues of the extent of the superior court's review authority and a change of physician by the employee without complying with OCGA § 34-9-201 (e).

Porter fell on Ingles' premises on July 18, 1990, suffering injuries to her neck and right shoulder, including headaches and a stiff neck. Ingles did not have a posted panel of physicians. In August 1990, she underwent a discectomy by Dr. Jacobs, a neurologist, for a herniated disc between the fifth and sixth cervical vertebrae. She was later treated by Dr. Osborn, an orthopedist, who performed a second discectomy and fused the fifth and sixth cervical vertebrae. Porter thereafter underwent disc decompression surgery by Dr. Loftman, another neurosurgeon.

## Case No. A95A1518

1. Ingles initially paid Porter's medical and income benefits without contesting coverage. Ingles did object to her treatment in 1992 by Dr. Riddell, a psychiatrist, for depression and an anxiety disorder related to her injury and resulting disability. While the other treating physicians had been approved by Ingles, Dr. Riddell was not, and Porter did not seek a change of physician or treatment under OCGA § 34-9-201 (e). She had, however, been referred to Dr. Riddell by her approved treating physician, Dr. Osborn.

The ALJ determined that the treatment by Dr. Riddell was not authorized and did not direct Ingles to pay the bills from this treatment. On June 21, 1994, the board issued its order reversing this portion of the ALJ's decision, determining that, since Ingles did not have a posted panel of physicians, *Lee Fabricators v. Cook*, 203 Ga. App. 450 (417 SE2d 35) (1992), did not apply, and Ingles was responsible for these bills.

In Case No. A95A1518, Ingles appeals from the superior court's affirmance by operation of law of this portion of the board's decision, contending the matter is controlled by *Wright v. Overnite Transp. Co.*, 214 Ga. App. 822 (449 SE2d 167) (1994).

(a) "[W]here the claimant changes doctors at a time the em-

ployer *is* providing medical care, the employer's subsequent termination of medical care and controversion of the claim does not excuse the claimant's failure to petition for a change 'at the time other medical services were sought.' *K-Mart Corp. v. Anderson*, 166 Ga. App. 421, 423 (304 SE2d 526) (1983). [Cits.]" (Emphasis supplied.) *Wright*, supra at 823 (1).

Therefore, since Ingles was providing medical care at the time Porter consulted Dr. Riddell, Porter was required to petition the board for a change of physician under OCGA § 34-9-201 (b) (1) at the time the board issued its decision on June 21, 1994.

(b) On July 1, 1994, however, the amendment to OCGA § 34-9-201 (b) (1) became effective. That amendment provided that the authorized physician could "arrange for any consultation, referral, and extraordinary or other specialized medical services as the nature of the injury shall require without prior authorization from the board. . . ."

We recently held that this amendment should be applied retroactively. *Barnes v. City of Atlanta Police Dept.*, 219 Ga. App. 139 (464 SE2d 609) (1995).

Therefore, the affirmance by operation of law of the board's order directing Ingles to pay for Dr. Riddell's services was correct, although for the reasons discussed above. A decision right for any reason will be affirmed.

### Case No. A95A1517

2. In Case No. A95A1517, Porter appeals from the superior court's order which remanded the case to the board, finding that Dr. Wood had changed his position after considering Porter's Florida medical records of Dr. May and that "Drs. Jacob and Loftman were not afforded the opportunity to review complete medical records of the claimant before rendering causation opinions via their letters of . . . 1993. . . ." Therefore, the court's order remanded to the board in order to afford Drs. Jacob and Loftman the opportunity to "affirm or revise their opinions regarding the prior injury of the claimant and job-related disability."

This was done even though the ALJ's decision, affirmed by the board, had determined that neither Dr. Wood's change of opinion nor the 1986 through 1989 records of Dr. May's treatment of Porter constituted newly discovered evidence under OCGA § 34-9-221 (h), because it was not of such a character that it likely would have produced a different result if it had been procurable previously. *Anderson v. Araguel, Sanders &c.*, 163 Ga. App. 610, 612 (295 SE2d 750) (1982). Compare *Carpet Transport v. Pittman*, 187 Ga. App. 463, 468 (2) (370 SE2d 651) (1988) (Board and ALJ had not consid-

ered the newly discovered evidence to determine its effect).

Dr. May's records reflect that, in late September 1986, Porter and her husband were lifting furniture when she hurt her neck. Dr. May diagnosed a cervical sprain, which resolved within a month. Mr. Porter testified at the hearing before the ALJ concerning this neck/shoulder strain, even though Porter did not recall it. The records reflect continuing treatment by Dr. May for chronic low back pain through 1986 and 1987. Porter made no visits to him in 1988. On March 22, 1989, Porter returned to Dr. May for treatment of low back pain resulting from lifting water at a charity event. Through nine visits thereafter, the only reference to neck pain is an entry on June 16, 1989, that she "still has discomfort in her neck, right hip and low back."

The ALJ noted that Dr. Wood had conducted an independent medical examination of Porter in November 1990 in which he referred to the "right side bone spur and disc defect" which he opined did not explain what he described as her left-sided complaints.[1] He nonetheless concluded that Porter's job accident was probably a muscle and ligament strain superimposed upon the pre-existing degenerative disc.

Such aggravation of a pre-existing condition by an on-the-job injury is a compensable new accident. *SMB Stage Line v. Leach*, 204 Ga. App. 229, 231 (2) (418 SE2d 791) (1992); *McLeroy Plumbing Svc. v. Starks*, 201 Ga. App. 270, 271 (1) (410 SE2d 756) (1991).

Even accepting that Dr. Wood might have changed his opinion after seeing the 1989 entry, conflicting opinions by medical experts, under the "any evidence" rule, compel upholding the board's award. *SMB Stage Line*, supra at 230 (1). Compare *Carden v. Arrow Co.*, 193 Ga. App. 539, 540 (1) (388 SE2d 348) (1989) (doctor unable to give any opinion until a third test performed, which was found to be "new evidence").

Here, the superior court did not conclude that the prior neck/back injury had not been considered at all by the board, only that it was remanding for a new analysis of that evidence. Such a remand is beyond the authority of the court under OCGA § 34-9-105. "As to the facts, it could reverse the Board only if there was 'not sufficient competent evidence in the record to warrant the members making the decision.' [Cits.]" *Iso-Graphics v. Evans*, 205 Ga. App. 880, 881 (424 SE2d 24) (1992). Mere speculation that the evidence might be considered differently does not justify remand. *Travelers Ins. Co. v. Hogue*, 130 Ga. App. 844, 845 (204 SE2d 760) (1974); see *Ansa Mufflers Corp. v. Law*, 192 Ga. App. 45 (383 SE2d 574) (1989).

---

[1] His comment was the only reference to left-sided complaints. The remaining evidence, including Porter's statement that she told Dr. Wood her pain was right-sided, was conflicting, and there is no basis for the court's reevaluation of this evidence.

*Judgment affirmed in Case No. A95A1518. Judgment reversed in Case No. A95A1517. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 31, 1995 — 

*Bennie H. Black*, for appellant.
*Wallace D. Magee*, for appellees.