## A01A1912. SHEPHERD CENTER et al. v. WILLIAMS.
### (553 SE2d 872)

ELDRIDGE, Judge.

Anthony S. Williams filed a claim with the State Board of Workers' Compensation against Shepherd Center and its servicing agent, Georgia Hospital Association c/o Allied Claims Administration, Inc. ("Allied"), after Williams suffered a back injury on the job. An administrative law judge ("ALJ") denied Williams' claim based on Shepherd Center's successful assertion of the three-prong *Rycroft*[1] defense, alleging that Williams knowingly and deliberately answered falsely on his job application when asked if he had ever had a back injury. The appellate division of the State Board of Workers' Compensation adopted the ALJ's determination.

The Superior Court of Fulton County reversed, finding that Shepherd Center failed to demonstrate the second prong of the *Rycroft* defense, i.e., that Shepherd Center's reliance on Williams' false answer was a "substantial factor" in hiring him. We granted Shepherd Center's application for discretionary review in order to consider the scope of the second prong of the *Rycroft* defense. For the reasons that follow, we reverse the order of the superior court.

Williams began suffering back pain in 1986 as a result of his constant use of an electric drill pursuant to his employment with the Angus-Stewart Company. He was diagnosed as having "degenerative changes and bulges at L3-4 and L5-S1 with a central herniation at L4-5." Williams was out of work for over two years and received total disability benefits. The record contains testimony that Williams sustained minimal physical impairment, but he was advised not to do work that required heavy lifting. He ultimately settled his workers' compensation claim for $30,000 and two years of open medical treatment.

---

[1] See *Ga. Elec. Co. v. Rycroft*, 259 Ga. 155 (378 SE2d 111) (1989).

When Williams returned to the work force, he held down several jobs that required heavy lifting, including a job delivering hospital beds and wheelchairs for Peachtree Medical. In 1997, he interviewed for employment with Georgia Wheelchair, a subsidiary of Shepherd Center, as a delivery technician to home-deliver hospital beds, wheelchairs, walkers, etc. The job application signed by Williams stated that "[a]s a condition of employment, a medical history and examination will be completed. I understand that the results of the medical history and examination must be appropriate for the position for which I am applying." Following the interview, he was hired by Georgia Wheelchair.

After being hired but before beginning work, Williams filled out a medical history. In it, he was asked if he had ever sustained a back injury. Williams answered no. He also answered in the negative when asked if he had "ever received compensation for any injury or liability." Williams then underwent a routine employment medical examination that revealed nothing unusual. He began employment and, one month later, tripped on a set of brick stairs while delivering a hospital bed to a patient's home. Williams hurt his back, missed two days of work, and then returned to the same job; however, he continued to experience back pain.

Seven months later, Williams saw a job posting for a position in the bio-medical department as a technician responsible for the maintenance of the hospital's equipment, another physically demanding position. He requested a transfer to the bio-medical job and received such in October 1997. A year later, on November 30, 1998, while answering a maintenance call, Williams stepped out of an elevator at the Center and fell one and one-half feet because the elevator threshold had improperly seated higher than the floor level. Williams sustained a back injury, which an MRI confirmed was "degenerative disc disease at L3-4 and L4-5 along with a disc bulge at L5-S1." He returned to light-duty work at Shepherd Center as he sought medical treatment, including surgery. Williams made a claim for workers' compensation benefits in order to defray medical costs.

Pursuant to the workers' compensation claim, Shepherd Center's third-party administrator, Allied, did a medical background check on Williams and discovered his previous back injury. Allied informed Shepherd Center of such. Williams was terminated because the Center "realized he had lied on his application process and his pre-employment physical and that is grounds for immediate termination." The Director of Human Resources at Shepherd Center

> went over with [Williams] that he lied on his ap — his pre-employment physical and the reason why that — the impact

that had on Shepherd. The fact that we could not reasonably accommodate him and we were not given the opportunity to reasonably accommodate him. And that we were not able to apply for a subsequent injury trust fund because of his — because he did not let us know.

Williams filed the instant suit seeking workers' compensation benefits. Shepherd Center asserted the three-prong *Rycroft* defense, which required the Center to show: (1) the employee knowingly and wilfully made a false representation as to his physical condition; (2) the employer relied upon the false representation and this reliance was a substantial factor in the hiring; and (3) there was a causal connection between the condition falsely represented and the current injury.[2] As to the second, "substantial factor" prong of such defense, the Director of Human Resources at the Shepherd Center testified that, if Williams had been candid about his previous back injury,

[i]t would have been investigated by employee health. They would have been — He would have been forwarded on to another step in the medical process. He would have had a — I can't remember what they call it. It's a clinical term where he would actually be talking to a doctor and the doctor would do this test. . . . And based on that decision by that doctor, we would have done one of two things — actually one of three things. Rescinded the offer altogether and sent him on his way; offered him opportunity to apply for other positions if they were available; or three, determine what parts of his job he was not able to do and look to reasonably accommodating them. Are there other people in the department that could do that part of the job for him? If it was a major part of his job, we could not have reasonably accommodated him. And I think in this case we would not have been able to have somebody else do the job for him with the lifting. He certainly wouldn't have been carrying beds upstairs. . . . I'd have to go with the doctor's decision.

The ALJ found that such evidence established that Williams' false answer was a substantial factor in hiring him and denied benefits. On appeal, however, the Superior Court of Fulton County found — from the same evidence — that Shepherd Center failed to show as a matter of law that reliance on Williams' false answer was a sub-

---

[2] *Rycroft*, supra at 158.

stantial factor in hiring him. The superior court reversed the ALJ and awarded Williams benefits. *Held:*

Only the second prong of the *Rycroft* defense is in dispute here.[3] The superior court concluded from the evidence that a truthful answer would have only engendered further medical inquiry.[4] Depending on the result of that further inquiry, Williams might very well have been hired anyway, regardless of his prior back injury; Shepherd Center "would have to go with the doctor's decision." The superior court concluded as a matter of law that Shepherd Center failed to prove Williams would not have been hired if he had answered truthfully; that if Williams would have been hired after admitting his prior back injury, then denying his prior back injury was not a "substantial factor" in the employment decision. This reading of the second prong of *Rycroft* demonstrates an "all or nothing" approach: either Williams would have been hired based on his false answer or he would not. Under this approach, absent an affirmative showing that Williams would not have been hired had he been candid about his previous back injury, the second prong of *Rycroft* cannot be met.

However, this Court has previously declined to read *Rycroft*'s second prong in such a narrow, "formulaic" fashion.[5] For employers that are sensitive to the requirements of the Americans with Disabilities Act ("ADA"),[6] a truthful answer about a prior physical condition will not and should not result in an "all or nothing" determination which precludes employment completely based on the answer. Further medical evaluation of a prior disability is consistent with the ADA and with a sound public policy that deters discrimination in employment based on physical disability, unless the demands of a specific job require it. In *Caldwell v. Aarlin/Holcombe Armature Co.*,[7] our Supreme Court determined that the *Rycroft* defense does not conflict with the ADA and that *Rycroft* can be read to be in harmony

---

[3] As to *Rycroft*'s first and third prongs, it is undisputed that Williams answered falsely on his medical history as to his prior back injury. Also, there is medical testimony in the record that Williams' fall from the elevator aggravated his pre-existing degenerative disc condition that had been diagnosed in 1986, thereby providing evidence of a causal connection between Williams' pre-existing physical condition about which he made the false representation and the injury for which benefits were claimed. See *Gordon County Farm v. Cope*, 212 Ga. App. 812, 813 (442 SE2d 896) (1994).

[4] While specific findings of fact were not made a part of the superior court's order, the reasoning utilized may be implied both by Williams' arguments before the Court in this regard and by the trial court's subsequent determination that the evidence demanded reversal "as a matter of law," i.e., the fact at issue was conclusively shown by plain, palpable, and undisputed evidence capable of only one result. *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 646 (522 SE2d 467) (1999).

[5] *Fort Howard Corp. v. Devoe*, 212 Ga. App. 602, 604 (442 SE2d 474) (1994).

[6] 42 USCA § 12101 et seq.

[7] 267 Ga. 613, 614-615 (481 SE2d 196) (1997).

with the ADA. Thus, an admission on an employment application of a prior physical condition which results in further medical evaluation of the condition and a hiring recommendation based thereon makes the admission, itself, a "substantial *factor*" in the hiring process, regardless of the ultimate employment decision.

In this case, there was testimony that further medical evaluation would definitely have been performed if Williams had been honest about his back condition, and a hiring decision would have been based on such further evaluation. Whether Williams would or would not have been hired following the further evaluation cannot be known.[8] Moreover, in light of the third prong of the *Rycroft* defense, i.e., a causal connection between the prior, undisclosed condition and the current injury, we feel the "but for" implications of the second prong are satisfied without an affirmative, after-the-fact determination that the additional medical evaluation prevented by the employee's false answer would unquestionably have resulted in a nonhire.

A truthful answer on Williams' medical history would have been a substantial factor in Shepherd Center's employment determination because the truth would have prompted the commission of additional medical evaluations and the hiring decision would have been founded on same. It follows, then, that Williams' misrepresentation on his medical history was a substantial factor in Shepherd Center's employment determination because the misrepresentation prompted the omission of additional medical evaluations and the hiring decision was founded on such omission.[9] The second prong of the *Rycroft* defense was met under the evidence in this case.

*Judgment reversed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 20, 2001 —
RECONSIDERATION DENIED SEPTEMBER 14, 2001 — 

*Tash J. Van Dora*, for appellants.
*Norman S. Epstein*, for appellee.

---

[8] We reject Williams' contention that, if Shepherd Center's orthopedic specialist, Dr. Herndon Murray, had been made aware of Williams' prior back injury, he "would have allowed the Appellee to try the position." In fact, Dr. Murray testified that "he [Williams] may be more likely to hurt himself than someone who's not had back problems. Again, I was not aware of what back problems he's had before that. I'm still not aware." Williams has a tough row to hoe in arguing that he would have been hired based on a nonexistent medical examination of an undisclosed back injury.

[9] *Fort Howard Corp. v. Devoe*, supra at 604.